GARRISON, Judge.
This is a suit by plaintiff against Dr. Beebe, her former gynecologist, and Dr. DiVincenti, the surgeon who subsequently took over her care. The plaintiff, a woman in her early 20’s, alleged that the hysterectomy which ultimately was performed upon her by Dr. Loyacano was made necessary by the negligence of the two defendant physicians.
The jury, while ruling in favor of Dr. Beebe, found in favor of plaintiff and against Dr. DiVincenti and his insurer. Dr. DiVincenti has appealed and plaintiff has also appealed seeking a judgment against Dr. Beebe.
The nature of this case requires, to an unusual degree, a highly detailed review of the facts.
SUMMARY OF THE FACTS
In August of 1972 Dr. Beebe, a specialist in obstetrics and gynecology, delivered plaintiff’s child by Caesarian section. Subsequently, plaintiff continued to visit Dr. Beebe regularly.
On March 7, 1974 plaintiff visited Dr. Beebe, complaining of pain in the lower right side of her abdomen. Dr. Beebe diagnosed an ovarian cyst and prescribed medication. On March 14th Dr. Beebe administered an injection to suppress the cyst.
On March 22nd plaintiff returned still complaining of abdominal pain. Dr. Beebe’s examination confirmed that the cyst was still present and prescribed penicillin medication for the plaintiff. On March 25th the cyst still seemed to be present and Dr. Beebe instructed her to continue taking the penicillin as well as pain tablets. On April 3rd Dr. Beebe concluded that the size of the cyst had decreased but learned that she had not menstruated although menstruation had been due several weeks earlier.
Plaintiff subsequently was admitted to the hospital where Dr. Beebe performed a “D and C” (dilation and curettage), which consists of an opening of the cervix and a scraping out of the womb. Dr. Beebe concluded that she had not ovulated and had not miscarried.
On May 8th Dr. Beebe performed a postoperative examination in which he felt no cysts in plaintiff’s ovary. Inasmuch as she was doing satisfactorily, she was released to normal activity. In June plaintiff called Dr. Beebe’s office and reported that she had not menstruated, and he prescribed medi *104 cation which brought on menstruation. In September plaintiff called Dr. Beebe’s office complaining of a pain in her left side. She was instructed to visit the office, but did not.
On December 4th the plaintiff requested Dr. Beebe to fit her with an I.U.D. (intrauterine contraceptive device). On December 19th, 1974 Dr. Beebe examined the plaintiff in order to check placement of the I.U.D., and instructed her to return in six months for her regular check-up.
In June 1975 Dr. Beebe saw the plaintiff, conducted a pelvic examination and found no female problems. On July 17, 1975 plaintiff came to Dr. Beebe’s office complaining of a pain in her lower right abdomen. On that occasion Dr. Beebe concluded that she had a tender right ovary. He placed her on ampicillin medication.
Plaintiff returned to Dr. Beebe on July 21, 1975 continuing to complain of an abdominal pain. Because of fever and an elevated white blood count, he diagnosed appendicitis, along with the tender right ovary, which was classified as the same thing he had treated in March, 1974. In view of the appendicitis diagnosis, he referred her to Dr. DiVincenti, since a general surgeon treats this condition.
On the occasion of this referral, Dr. Beebe informed Dr. DiVincenti — according to the latter. — that, in his opinion, the plaintiff’s symptoms were not coming from any gynecological problem. While Dr. DiVin-centi conceded he initially diagnosed that she might have possible ovarian disease, he emphasized that her primary problem was appendicitis.
On July 23rd Dr. DiVincenti performed exploratory surgery in the area of plaintiff’s abdomen. Appendicitis was discovered, and the pathological report classified the specimen as acute appendicitis. The doctor also noted an oozing surface on the right ovary, indicating a ruptured corpus luteum cyst, and sutured the site of the oozing.
As Dr. DiVincenti testified, during the operation he was able to see and examine plaintiff’s reproductive organs, including both ovaries, her fallopian tubes and her uterus. Dr. DiVincenti’s testimony was that there was no evidence of gynecological or ovarian disease. He stated that it was “very common” to see a ruptured corpus luteum cyst during an appendectomy.[1]
The plaintiff received post-operative treatment under Dr. DiVincenti.
However, on August 3rd she was re-admitted to the hospital because of an abscess of the surgical incision. She responded well to treatment and was discharged on August 9th with instructions to resume her routine gynecological care.
However, on September 2nd plaintiff was examined by Dr. DiVincenti’s associate as the result of her complaints of abdomen and chest pain and a burning sensation when she urinated. The examination turned out to be negative. She was next examined on September 3rd complaining again of abdominal pain, at which time additional tests were conducted. On September 9th she returned to Dr. DiVincenti’s office with a complaint of pain in the area of her incision and her chest. Because of tarry stools, epigactric pain, and various stresses, Dr. DiVincenti suspected an ulcer.
The plaintiff was re-admitted to the hospital on September 13, 1975 because of continued abdominal pain as well as a forty pound weight loss. After extensive tests and numerous consultations, the diagnosis was recorded as “abdominal pain of unknown etiology.” She was discharged on September 26 by Dr. Pettit, an internist and diagnostician, as doing well, with instructions to return in a year.
During these tests, Dr. Beebe was not consulted at anytime. Nor was any other *105 gynecologist called in by Dr. DiVincenti. However, Dr. DiVincenti testified that in considering a diagnosis, he and his associates discussed gynecological problems, but that plaintiff had not had any menstrual complaints or vaginal bleeding or discharge, and that during surgery he had “held the organs in my hands,” which is “the best examination you can get.”
On November 19th plaintiff returned to see Dr. DiVincenti, complaining of a pain behind her right knee. On December 10th plaintiff returned to Dr. DiVincenti complaining of abdominal pain; however he was unable to find anything wrong with her. He did not consult a gynecologist. This was plaintiff’s last visit to Dr. DiVin-centi.
Plaintiff testified that in late December of 1975 or in January, 1976 she called Dr. Beebe to inform him that she had been bleeding for 31 days and that he advised her to wait until her next period and then to call again. However, Dr. Beebe specifically denied this occurrence, stating that he was completely out of practice with a serious coronary infarction from October, 1975 until mid-February, 1976.[2]
On the same day, at the urging of friends, plaintiff called Dr. Eugene Loyaca-no, a gynecologist, and complained of her continued bleeding. (Dr. Loyacano’s records indicated the date was January 23, 1976.) Dr. Loyaeano saw the plaintiff in his office and observed that she experienced minimal tenderness in her uterus and ovaries. Since she had the I.U.D., he suspected endometritis, which is inflammation or infection of the lining of the uterus and caused menstrual-type pain.
On January 30th he saw her again, at which time he found that she still had a tender uterus and ovaries. On January 31 he again saw her. She was now experiencing pain in her right fallopian tube and ovary, along with vaginal bleeding. He removed the intrauterine device at this time, because the device often causes en-dometritis.
On February 6th plaintiff again consulted Dr. Loyaeano, complaining of abdominal pain on both the left and right sides of her abdomen. Two days later she was hospitalized, at which time Dr. Loyaeano performed a “D and C” operation.
On February 17th plaintiff against visited Dr. Loyaeano, complaining of moderate to severe pain in her right abdomen and left side. Because of the appearance of a new and significant symptom, a prolapsed uterus, he recommended a hysterectomy.
On February 23rd plaintiff was admitted to the hospital. Two days later Dr. Loyaca-no performed a total abdominal hysterectomy on plaintiff, removing her uterus in toto, both tubes and the ovaries.
Dr. Loyaeano, who testified as an expert in the field of obstetrics and gynecology as well as plaintiff’s gynecologist, stated that during the course of the operation he observed that:
“. . . the uterus was deeply recessed in the cul-de-sac and a little bit larger than usual and a little softer or mushier. The uterus a little bit on the abnormal size and being recessed means that it was deeply placed down, way down in the pelvic tunnel. And this was giving the patient the felling of prolapse, that is, that feeling as if her bottom was going to fall out. Okay. Both tubes appeared to be grossly abnormal. The fallopian tubes to me at the time, this was a gross visual observation that they did not appear to be normal. They were grossly abnormal. Both ovaires were enlarged above normal and very cystic. .
“. . . The left ovary was twice the normal size and . . . this ovary had a cyst that was bleeding at this time and there was a little blood in the peritoneal cavity or the abdominal cavity. It was also noted that both tubes and ovaries were adhered by some very fine, very fine tubo-ovarian adhesions. This means *106 that both tubes and ovaries were kind of stuck together and stuck to the pelvic side wall or abdominal wall by piano string, just like strings of mucus across in a spider web fashion. . . . ”
Dr. Loyacano went on to testify that there were also additional abnormal adhe-sions, which he broke and dissected, that the ovaries were enlarged and very cystic, that the veins in the infundibulo-pelvie ligament and the broad ligament appeared to be larger than normal, and that there were a few that were tortuous, suggesting possibly a pelvic congestion syndrome. He stated that this congestion syndrome could cause pain in the patient and that his removal of the uterus and the tubes and the ovaries were to assure the plaintiff of permanent relief.
He testified further that these abnormalities were plainly visible during surgery, that they were not recent developments but had been long standing. He “venture(d) a guess” and estimated that the condition developed over a period of approximately two years. However, he explained as follows:
“I’ll have to answer this question, Judge, in my own way, because it needs some clarification. Because first of all, when female problems occur, they may simmer. A doctor may not detect signs and symptoms of female problems. When I say that Mrs. Baker’s problems existed for two years, what I mean is that these problems possibly could have started two years prior without any signs of symptoms to give an example, many times we have had to take a single tube and ovary out of young girls because of chronic pain in that one particular side and at the time of the operation the tube and ovary looked very, perfectly normal. However, at that time it was, we know that if an organ causes chronic pain, we excise or remove that organ to correct the pain. So I cannot say with certainty that Mrs. Baker had signs and symptoms of female problems during that course of two years without exhibiting signs and symptoms of it. She may have, when I say that this was, when I say that that was existing, she may have had perfectly looking normal tubes and ovaries and female organs during that time and yet still caused pain, you know. However, she did not exhibit any signs and symptoms of female problems so in my opinion no one could, no one had any justification to try to save anything that wasn’t giving any problems.”
After Dr. Loyaeano’s surgery, plaintiff no longer experienced female problems as she had previously. She did, as she testified, experience serious emotional problems, having had a nervous breakdown — which hospitalized her — as recently as two months prior to her testimony.
NEGLIGENCE OF DR. BEEBE
There is no suggestion that Dr. Beebe’s treatment of plaintiff’s complaints of a tender ovary in March, 1974 was not proper. Dr. Beebe testified that 15% of his patients each month have this complaint and that the condition almost always subsides with conservative treatment, as plaintiff’s did.
Nor is there any suggestion that the “D and C” procedure in May, 1974 was improperly undertaken or yielded untoward results.
Plaintiff’s next complaint was 14 months later and one month after a completely normal periodic check-up. He began conservative treatment with antibiotics, but when a serious situation with possible appendicitis presented itself four days later, he immediately referred her to the proper specialist.
Plaintiff never consulted Dr. Beebe again.
The jury properly concluded Dr. Beebe’s conduct did not fall below accepted standards of proper medical care.
NEGLIGENCE OF DR. DiVINCENTI
The main thrust of plaintiff’s case against Dr. DiVincenti was his failure to discover the diseased organs during the July, 1975 surgery and his failure to seek gynecological consultation during the period *107 in which he was unable to explain plaintiff’s complaints of abdominal pain.
Plaintiff has the burden of proving the elements of negligence by a preponderance of the evidence. Since Dr. DiVin-centi was the only trial witness who was present at the surgery, proof of the fact that the organs were diseased at the time, which should have been observed by him, depends upon circumstantial evidence.
Proof by direct or circumstantial evidence is sufficient to constitute a preponderance when the evidence, taken as a whole, shows that the fact sought to be proved is more probable than not. Boudreaux v. American Ins. Co., 262 La. 721, 264 So.2d 621 (1972). Here, the only evidence possibly suggesting the disease of the organs was observable in July, 1975 was Dr. Loyacano’s estimate that the disease developed over the course of two years. However, he carefully explained that plaintiff may have had normal looking organs at the time of surgery, even if she complained of pain. On this evidence, viewed as a whole, it is at least equally probable that there were no observable signs of disease at the time of surgery, and there is no preponderance favoring plaintiff.
As to the failure to seek consultation by gynecologist, Dr. DiVincenti explained that from July, 1975, when he undertook plaintiff’s treatment, until December, 1975, the last time she consulted him, she never stated any history of menstrual complaints, or vaginal bleeding or discharge, or any other symptoms which would call for consultation with a gynecologist. There is absolutely no evidence in this record that she described any of these symptoms. More importantly, there is absolutely no expert testimony that because of the symptoms plaintiff did describe, Dr. DiVincenti should have called a gynecologist in consultation. In fact, the only expert evidence is directly to the contrary.
Plaintiff’s case falls for lack of evidence sufficient to support the jury verdict.
For the assigned reasons, the jury verdict rendered in favor of Dr. Jackson L. Beebe is affirmed and the verdict rendered against Dr. Frank B. DiVincenti is reversed.
AFFIRMED IN PART; REVERSED IN PART.

. Dr. Beebe described corpus luteum cyst as a normal cyst which develops in one of the ovaries each time a woman ovulates. The cyst ruptures during the menstrual cycle and allows the egg to escape and pass into the fallopian tube. The doctor stated it would not be possible to ovulate without the formation and rupture of corpus luteum cyst, noting that the rupture does not indicate anything abnormal.

. While denying that he gave this advice, Dr. Beebe admitted such conduct would be below the standards of acceptable medical care. The jury, by finding Dr. Beebe free of negligence, obviously accepted his version over that of plaintiff.